CHRISTOPHER JOSEPH DESALVA (SBN 172209)
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
45-902 Oasis Street, Suite D, Indio, CA 92201
Telephone: (760) 447-0031 | Email: desalvalaw@gmail.com

Attorney for Petitioner
LILIAN GUADALUPE PEREZ-GOMEZ

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA — EASTERN DIVISION**

| | |
|---|---|
| LILIAN GUADALUPE PEREZ-GOMEZ (A098-042-367),<br><br>Petitioner,<br><br>vs.<br><br>FERETI SEMAIA, Warden, Adelanto ICE Processing Center; THOMAS GILES, Field Office Director, U.S. Immigration and Customs Enforcement, Los Angeles Field Office; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No.: 5:26-cv-______________<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF**<br><br>**IMMEDIATE RELEASE REQUESTED**<br><br>[Post-Order Detention — 8 U.S.C. § 1231(a)(6); Adelanto ICE Processing Center] |

## I. INTRODUCTION

1. Petitioner LILIAN GUADALUPE PEREZ-GOMEZ (A098-042-367), a 45-year-old native and citizen of El Salvador, has been detained by U.S. Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center since May 14, 2026 — one hundred thirty-six (136) days as of the date of this Petition — on the strength of an in absentia removal order entered in 2004, without any individualized custody determination by a neutral decisionmaker, and on the basis of a written custody finding that the Government's own file disproves.

2. For twenty-two years the United States knew where Ms. Perez-Gomez was. The Government itself released her on her own recognizance the day it encountered her

in March 2004 (Form I-220A) and never once, in the two decades that followed, revoked that release, imposed a condition, or alleged a violation. In those years she raised two sons in Los Angeles County — one a thirteen-year-old United States citizen, the other a recipient of Deferred Action for Childhood Arrivals — married, worked, filed federal and California tax returns, and became a member of her church. When she was the victim of a violent crime in 2019, she called the police, cooperated, and obtained a certification of her helpfulness from the Los Angeles Police Department on Form I-918, Supplement B. Her Petition for U Nonimmigrant Status is pending before U.S. Citizenship and Immigration Services ("USCIS"), and on July 9, 2026 — while she sat in Adelanto — USCIS granted her employment authorization in category C14, the category reserved for noncitizens to whom USCIS has granted deferred action, valid through July 8, 2030.

3. None of this moved ICE. After receiving a complete release package documenting every one of these facts, the ICE Deciding Official continued her detention under 8 C.F.R. § 241.4 on the written ground that she "has not demonstrated that, if released, [she] will not be a flight risk," a determination ICE said it made "based upon your immigration history and, lacking any significant ties to the community, and with an active final order of removal." (Ex. A.) That single sentence — "lacking any significant ties to the community" — was written by an agency holding her son's birth certificate, her marriage certificate, her joint tax return, her church letters, and its own sister agency's grant of deferred action.

4. Because Ms. Perez-Gomez is detained under 8 U.S.C. § 1231(a)(6) on an administratively final order of removal, no Immigration Judge has jurisdiction to consider her custody. See 8 C.F.R. § 1236.1(d)(1) (bond redetermination by an Immigration Judge available only "before an order under 8 CFR part 1240 becomes final"); 8 C.F.R. § 1003.19(a); 8 C.F.R. § 241.4 (post-order custody reviewed by ICE). The only custody process that exists for her is ICE's review of its own decision, a paper procedure in which she bears the burden, no hearing is held, no neutral decisionmaker participates, and — as this record shows — the agency may announce a dispositive "fact" that its own file

contradicts. The Ninth Circuit has held that these procedures “do not afford adequate procedural safeguards” for prolonged post-order detention. Diouf v. Napolitano, 634 F.3d 1081, 1091–92 (9th Cir. 2011) (“Diouf II”), abrogated in part on other grounds by Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022). Only this Court can vindicate her rights.

5. This Petition does not ask the Court to review, stay, or disturb the 2004 removal order. That order is on appeal to the Board of Immigration Appeals, and the exclusive channels of 8 U.S.C. § 1252 govern it. This Petition challenges only the lawfulness of Ms. Perez-Gomez’s present physical custody — a question squarely within 28 U.S.C. § 2241. Zadvydas v. Davis, 533 U.S. 678, 688 (2001).

6. Ms. Perez-Gomez therefore respectfully requests that this Court issue an Order to Show Cause returnable within three (3) days, issue the writ, and order her IMMEDIATE RELEASE on an Order of Supervision under conditions no more restrictive than reasonable reporting. In the alternative only, she requests that the Court order Respondents to provide her, within seven (7) days, a bond hearing before a neutral adjudicator at which the Government bears the burden of proving by clear and convincing evidence that she is a flight risk or a danger to the community, and to release her if that burden is not met. She further requests that the Court declare her continued detention unlawful; bar her transfer out of this District while the Petition is pending; order the return of any documents and property seized from her; and award attorney’s fees under the Equal Access to Justice Act.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241(a) and (c)(3), which authorize the federal courts to grant writs of habeas corpus to persons held in custody in violation of the Constitution or laws of the United States. See Zadvydas, 533 U.S. at 687–88 (§ 2241 habeas proceedings “remain available as a forum for statutory and constitutional challenges to post-removal-period detention”); Hernandez v. Sessions, 872 F.3d 976, 987–88 (9th Cir. 2017). Jurisdiction also arises under 28 U.S.C. §

1331, Article I, § 9, cl. 2 of the Constitution (Suspension Clause), and 28 U.S.C. §§ 2201–2202 (declaratory relief).

8. Nothing in 8 U.S.C. § 1252 divests this Court of jurisdiction. Sections 1252(a)(5) and (b)(9) channel review of the removal order to the court of appeals; they do not reach a challenge to the lawfulness of detention that is independent of the order. Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018). Section 1252(g) concerns the decision to "execute" a removal order, not the decision to imprison a person pending execution. And § 1252(a)(2)(B)(ii) does not bar review of constitutional claims or of the legal question whether detention is authorized at all. Zadvydas, 533 U.S. at 688. Petitioner does not ask this Court to review, reopen, stay, or invalidate the 2004 removal order.

9. Venue is proper in the Central District of California, Eastern Division, under 28 U.S.C. § 2241(d) and Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004), because Petitioner is physically detained at the Adelanto ICE Processing Center, Adelanto, San Bernardino County, California, within this District and Division, and her immediate custodian is located here.

## III. PARTIES

10. Petitioner LILIAN GUADALUPE PEREZ-GOMEZ is a native and citizen of El Salvador, born in 1981. She has resided continuously in the United States since March 2004 and, for many years, in Winnetka, Los Angeles County, California. She is currently detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, CA 92301.

11. Respondent FERETI SEMAIA is the Warden of the Adelanto ICE Processing Center and Petitioner's immediate custodian. He is sued in his official capacity.

12. Respondent THOMAS GILES is the Field Office Director of the ICE Los Angeles Field Office, Enforcement and Removal Operations, 300 North Los Angeles Street, Los Angeles, CA 90012, the office that issued the Decision to Continue Detention and that has authority over Petitioner's custody. He is sued in his official capacity.

13. Respondent DAVID VENTURELLA is the Acting Director of ICE, 500 12th Street SW, Washington, DC 20536. He is sued in his official capacity.

14. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Avenue SE, Washington, DC 20528. He is sued in his official capacity.

15. Respondent TODD BLANCHE is the Attorney General of the United States, 950 Pennsylvania Avenue NW, Washington, DC 20530, with supervisory authority over the Executive Office for Immigration Review ("EOIR"). He is sued in his official capacity.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED AND WOULD BE FUTILE

16. No statute requires exhaustion of administrative remedies before a § 2241 challenge to immigration detention. Any prudential exhaustion requirement is waivable. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Waiver is appropriate where administrative remedies are inadequate or not efficacious, where pursuit of them would cause irreparable injury, or where exhaustion would be futile. Laing v. Ashcroft, 370 F.3d 994, 1000–01 (9th Cir. 2004). Each ground is present here.

17. There is no immigration-court forum in which Petitioner could seek release. Because she is held under a final order of removal, an Immigration Judge lacks jurisdiction to redetermine her custody, 8 C.F.R. §§ 1236.1(d)(1), 1003.19(a), and there is accordingly no custody decision that could be appealed to the Board of Immigration Appeals. The only administrative process that exists is ICE's own post-order custody review under 8 C.F.R. § 241.4 — the agency reviewing itself. Petitioner pursued that process in full: she submitted a complete release request with supporting evidence (Ex. B), and ICE denied release on a stated ground that its own file contradicts (Ex. A). The next layer of the same procedure — a file review by ICE Headquarters — will not occur until on or about November 2026, will be administered by the same agency under the

same regulation, and cannot adjudicate whether the procedure itself satisfies the Fifth Amendment.

18. Each additional day of unlawful detention is a distinct and irreparable constitutional injury that no administrative process can remedy in time. Exhaustion is neither required nor possible, and any prudential requirement should be excused.

## V. FACTUAL BACKGROUND

### A. The 2004 Encounter, the Government's Own Release, and the In Absentia Order

19. Ms. Perez-Gomez entered the United States near Eagle Pass, Texas, on or about March 10, 2004, with her then-minor son. The same day, the former Immigration and Naturalization Service personally served her with a Notice to Appear (Form I-862) charging her under INA § 212(a)(6)(A)(i). The Notice ordered her to appear before the San Antonio Immigration Court "on a date to be set" and "at a time to be set," and recorded on its face that she "FAILED TO PROVIDE US ADDRESS." (Ex. C.)

20. That same day, the Government released Ms. Perez-Gomez on her own recognizance under an Order of Release on Recognizance (Form I-220A), entrusting her with custody of her minor son. (Ex. D; Ex. E ¶¶ 4–5.) No bond was required. No condition of supervision was imposed. The Government thus made, in 2004, its own determination that her detention was unnecessary.

21. On May 27, 2004, the San Antonio Immigration Court entered an order of removal in absentia. (Ex. F.) No notice specifying the date, time, and place of that hearing was ever served on Ms. Perez-Gomez, and the Government's charging document records that no address existed to which one could be mailed. (Ex. C; Ex. E ¶¶ 6–10.) Ms. Perez-Gomez did not learn that an order had been entered against her until she was taken into custody in May 2026. (Ex. E ¶ 10.) These facts are recited here solely as they bear on flight risk and on the character of her liberty; Petitioner does not ask this Court to adjudicate the validity of the order.

**B. Twenty-Two Years of Open, Government-Known Liberty**

22. From March 10, 2004, until May 14, 2026 — twenty-two years, two months, and four days — Ms. Perez-Gomez lived openly in the United States on the liberty the Government itself conferred. ICE never revoked her release, never imposed a condition, never alleged a violation, and never made any finding that she was a flight risk or a danger. She made her home in Winnetka, California, where she resided at the time of her arrest with her United States citizen son, and supported her family as a self-employed house cleaner. (Ex. E ¶ 11; Ex. G.)

23. Her younger son, M.S.R., is a United States citizen born in 2013 in Van Nuys, California. He is thirteen years old, lived with his mother until her arrest, and depends on her for his daily care, schooling, and stability. (Ex. H; Ex. E ¶¶ 12, 17–18.) Her older son, Carlos Daniel Perez, who came to the United States with her as a child, is a recipient of Deferred Action for Childhood Arrivals. (Ex. E ¶ 13.) In 2024 she married Leonel Enrique Pineda Brizuela in Los Angeles County (Ex. I), and the couple filed a joint 2025 federal and California income tax return from their Winnetka address (Ex. G). She is an active member of Iglesia Cristiana Monte Sinai Fuente de Vida, and members of her community have attested in writing to her character and her ties. (Ex. J.)

24. Ms. Perez-Gomez has no criminal history of any kind. She has never been arrested for, charged with, or convicted of any offense.

**C. Crime Victim, Certified Cooperation with the LAPD, and USCIS's Grant of Deferred Action**

25. On September 28, 2019, Ms. Perez-Gomez was assaulted in Winnetka by the father of her United States citizen son. She called the police. Officers of the Los Angeles Police Department responded, documented her injuries, obtained an emergency protective order for her and her child, and reported the conduct under California Penal Code § 273.5(a). The matter was referred to the City Attorney. (Ex. E ¶¶ 15–16; Ex. K.)

26. On April 30, 2024, the Los Angeles Police Department executed a Form I-918, Supplement B, certifying that Ms. Perez-Gomez was the victim of qualifying

criminal activity, possesses information concerning it, and has been helpful to law enforcement. (Ex. K.) She filed a Petition for U Nonimmigrant Status (Form I-918), which USCIS receipted under number LIN2504652448, and she appeared for biometrics as directed on December 18, 2024. (Ex. L.) The petition remains pending.

27. On July 9, 2026, USCIS approved Ms. Perez-Gomez's Application for Employment Authorization (Form I-765, Receipt No. LIN2504652532) in category C14 — the category applicable to a noncitizen "who has been granted deferred action" — valid from July 9, 2026, through July 8, 2030. (Ex. M.) Employment authorization for a U petitioner with a pending, bona fide petition is authorized by INA § 214(p)(6), 8 U.S.C. § 1184(p)(6), and a four-year grant of deferred action together with employment authorization in category C14 is the relief USCIS extends to a U petitioner upon a bona fide determination under its published policy. USCIS Policy Manual, vol. 3, pt. B, ch. 6. On information and belief, USCIS has therefore determined that Ms. Perez-Gomez's U petition is bona fide and has granted her deferred action for four years. That grant was made while she was in ICE custody, on the same day ICE served her with a Warning for Failure to Depart. (Ex. N.)

**D. The May 14, 2026 Arrest and Continuous Detention**

28. On May 14, 2026, Ms. Perez-Gomez was taken into custody by immigration officers at an airport while traveling domestically, on the basis of the 2004 in absentia order. (Ex. E ¶ 3.) She was not arrested for any crime. No changed circumstance, no violation of any condition, and no allegation of danger or flight preceded her arrest. She was transported to the Adelanto ICE Processing Center, where she has remained continuously detained for 136 days.

29. On July 9, 2026, ICE served Ms. Perez-Gomez with a Form I-229(a), Warning for Failure to Depart, and an instruction sheet regarding assistance in removal. (Ex. N.) Ms. Perez-Gomez has not refused, and does not intend to refuse, any lawful request for identity documents or information; she is in possession of a valid Salvadoran

passport and national identity document, copies of which she has furnished to ICE. (Ex. B.) ICE has not alleged that she has failed to cooperate in any respect.

**E. The Post-Order Custody Review and the Decision to Continue Detention**

30. In July 2026 ICE served a Notice to Alien of File Custody Review advising that her custody would be reviewed on or about August 12, 2026, under 8 C.F.R. § 241.4. (Ex. O.) On July 23, 2026, counsel submitted to the ICE Los Angeles Field Office a Submission in Support of Release with nine exhibits, and supplemented it on August 11, 2026. (Ex. B.) The submission placed before the Deciding Official her son's birth certificate, her marriage certificate, her joint tax return, her passport and identity card, four letters of community and church support, her U petition receipt and the LAPD certification, and a copy of her motion to reopen. It requested release on an Order of Supervision under whatever reporting and address-verification conditions ICE deemed appropriate.

31. ICE denied release. Its Decision to Continue Detention, received by Petitioner on or about August 19, 2026, states in full the reasons for continued custody: "ICE has determined to maintain your custody because you have not demonstrated that, if released, you will not be a flight risk. ICE has made such a determination based upon your immigration history and, lacking any significant ties to the community, and with an active final order of removal." (Ex. A.) The decision identifies no evidence, responds to none of the material submitted, and states no basis for the finding that she lacks significant community ties. It advises that if she is neither released nor removed within three months, jurisdiction over her custody will transfer to ICE Headquarters for a further file review, at which she may have a "personal interview" before an ICE officer.

32. No hearing was held. No neutral decisionmaker participated. Ms. Perez-Gomez bore the burden of proof. The dispositive finding — that she lacks significant ties to the community — is contradicted by every document in the file the Deciding Official was reviewing, and by the Government's own grant of deferred action five weeks earlier.

In the nearly six weeks since that decision, ICE has taken no further action on her custody.

**F. Pending Administrative Proceedings**

33. On or about July 8, 2026, Ms. Perez-Gomez moved the San Antonio Immigration Court to reopen and rescind the 2004 in absentia order for lack of notice under INA § 240(b)(5)(C)(ii). (Ex. P.) The Immigration Judge denied the motion by written order dated and mailed July 31, 2026. (Ex. Q.) Ms. Perez-Gomez timely appealed to the Board of Immigration Appeals on August 13, 2026 (Ex. R), and filed with the Board a motion to stay removal pending appeal (Ex. S). As of the date of this Petition, the appeal and the motion to stay remain pending. Petitioner recites these proceedings only to describe the posture of her custody; their merits are not before this Court.

**G. ICE Refuses to Accept a Stay Application and Reports That Petitioner Does Not Appear in Its System**

34. On September 25, 2026, Ms. Perez-Gomez's sister, Jacqueline Elizabeth Puente, a United States citizen, went in person to the ICE ERO Los Angeles Field Office at 300 North Los Angeles Street to file on her behalf a complete Application for a Stay of Deportation or Removal (Form I-246), with a Form G-28, approximately 244 pages of supporting documents, and a $155.00 money order for the filing fee — the same relief the Secretary is authorized to grant a U petitioner under 8 U.S.C. § 1227(d)(1). (Ex. U ¶¶ 5–9; Ex. V.) After reviewing the package and consulting a supervisor, an ICE officer told Ms. Puente that the application would be rejected if submitted that day and the fee forfeited; that the only reason was that Ms. Perez-Gomez has a custody review scheduled for October 27, 2026; and that, if ICE decided at that review to remove her, counsel could then bring the same paperwork back. ICE retained the Form G-28, returned the rest of the package and the money order, and issued no receipt, rejection notice, or other writing. (Ex. U ¶¶ 12–18.) The Form I-246 therefore has not been filed, not for want of trying, but because ICE would not accept it.

35. The same officer told Ms. Puente that there was something "really weird" about the case: the officer at the detention facility had not reported to the Los Angeles Field Office that Ms. Perez-Gomez was in custody, and she did not appear in ICE's system. (Ex. U ¶ 14.) That statement is corroborated by ICE's own public Online Detainee Locator System: a search by her A-number (098-042-367) and country of birth (El Salvador) returns "Search Results: 0 — Your search has returned zero (0) matching records," although she has been held at Adelanto without interruption since May 14, 2026. (Ex. W.) The Field Office that issued the Decision to Continue Detention (Ex. A) and that holds jurisdiction over her custody thus has no working record that it is detaining her.

36. ICE's Decision to Continue Detention advised that, if Ms. Perez-Gomez was neither released nor removed within three months of the 90-day review, jurisdiction over her custody would transfer to ICE Headquarters for a further file review. (Ex. A.) ICE has since served a Notice to Alien of Interview for Review of Custody Status scheduling that interview for October 27, 2026, at 11:00 a.m. at Adelanto — the same review the officer described to Ms. Puente — at which ICE "may consider" criminal history, "equities in the United States," and cooperation, and after which she "will be notified of the decision." (Ex. X.) Until then, by ICE's own account, no officer will act on her custody, no stay application will be accepted, and no neutral adjudicator will examine whether her continued imprisonment is justified.

**H. Detention Count**

37. As of the date of this Petition, Ms. Perez-Gomez has been detained for 136 days without a custody hearing before any neutral adjudicator. ICE treats her removal period as having begun on May 14, 2026; that period expired on or about August 12, 2026, and she is now held, if at all, under 8 U.S.C. § 1231(a)(6). The six-month presumptively reasonable period recognized in Zadvydas ends on or about November 14, 2026 — less than seven weeks from the filing of this Petition.

## VI. LEGAL FRAMEWORK

38. Section 1231(a)(6) and the limits of post-order detention. After the 90-day removal period, INA § 241(a)(6), 8 U.S.C. § 1231(a)(6), permits — but does not require — the continued detention of a noncitizen under a final order. The Supreme Court has construed the statute to contain an implicit reasonableness limitation, because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Zadvydas, 533 U.S. at 690. Post-order detention is civil, not punitive; it is constitutionally permissible only insofar as it bears a "reasonable relation" to its purpose of effecting removal and is accompanied by adequate procedural protections. Id. at 690–91.

39. The § 241.4 custody review does not satisfy due process. The Ninth Circuit has squarely held that the post-order custody review procedures of 8 C.F.R. § 241.4 "do not afford adequate procedural safeguards" against the erroneous prolonged detention of noncitizens held under § 1231(a)(6), because "the alien bears the burden" of proving he is not a flight risk or danger, the review is conducted on paper by ICE officers rather than by a neutral adjudicator, and the detainee has no opportunity to appear, to confront evidence, or to obtain a reasoned decision. Diouf II, 634 F.3d at 1091–92. The court accordingly construed the statute to require that a noncitizen facing prolonged detention under § 1231(a)(6) receive a hearing before an immigration judge at which the Government bears the burden of justifying continued detention. Id. at 1092; see also Singh v. Holder, 638 F.3d 1196, 1203–05 (9th Cir. 2011) (Government must prove flight risk or danger by clear and convincing evidence; contemporaneous record required). In Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022), the Supreme Court rejected that statutory construction, holding that the text of § 1231(a)(6) does not itself mandate bond hearings; but the Court expressly declined to reach the detainee's constitutional claims, leaving them "for the lower courts to consider in the first instance," id. at 582–83, and it did not disturb Diouf II's analysis of why the § 241.4 procedures fail to guard against erroneous prolonged detention. Singh's allocation of the burden, moreover, rests on the Due Process Clause and survives Jennings. Aleman Gonzalez v. Barr, 955 F.3d 762, 766–

67 (9th Cir. 2020), rev'd on other grounds, 596 U.S. 543 (2022); see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 n.4 (9th Cir. 2022) (declining to abrogate Singh). The Supreme Court's reversal in Aleman Gonzalez rested solely on the bar on class-wide injunctive relief in 8 U.S.C. § 1252(f)(1), which by its terms preserves relief "with respect to the application of such provisions to an individual alien." Garland v. Aleman Gonzalez, 596 U.S. 543, 549–50 (2022).

40. The burden in any custody hearing belongs to the Government. Where the Due Process Clause requires a custody hearing for a noncitizen in prolonged civil detention, the Ninth Circuit has held that the Government must bear the burden of proving, by clear and convincing evidence, that the detainee is a flight risk or a danger to the community; that the adjudicator must consider alternatives to detention and the detainee's ability to pay any bond set; and that a contemporaneous record of the hearing must be made. Singh, 638 F.3d at 1203–09; see also Hernandez, 872 F.3d at 990–91 (consideration of financial circumstances and alternative conditions of release). The allocation of the burden follows from the nature of the liberty at stake: "it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual' — deprivation of liberty — is so significant." Singh, 638 F.3d at 1203–04 (quoting Addington v. Texas, 441 U.S. 418, 427 (1979)). A hearing at which the detainee bears the burden of disproving flight risk — which is precisely the procedure ICE applied under § 241.4 (Ex. A) — is not the hearing the Constitution requires.

41. Procedural due process. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Whether the procedures attending a deprivation of that liberty are constitutionally adequate is governed by Mathews v. Eldridge, 424 U.S. 319, 335 (1976), which weighs (1) the private interest affected, (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the Government's interest, including the burden of additional procedure. A custody determination that rests on a

finding contradicted by the decisionmaker's own record is the paradigm of the erroneous deprivation the second Mathews factor is designed to prevent.

42. Federal law protects U petitioners and deferred-action grantees from enforcement detention. Congress authorized the Secretary to grant employment authorization to U petitioners whose pending petitions are bona fide, INA § 214(p)(6), 8 U.S.C. § 1184(p)(6); USCIS, under its published bona fide determination policy, grants such petitioners deferred action for four years, USCIS Policy Manual, vol. 3, pt. B, ch. 6; and Congress authorized the Secretary to stay the removal of a noncitizen with a pending U petition, INA § 237(d)(1), 8 U.S.C. § 1227(d)(1). On May 20, 2026, this Court certified nationwide classes and, under 5 U.S.C. § 705, stayed (i) ICE's 2025 Guidance rescinding its victim-centered enforcement directives, in favor of "[a]ll individuals with pending principal or derivative U visa petitions . . . who ICE detains or seeks to detain for civil immigration enforcement," and (ii) ICE's "De Facto Revocation Policy, under which ICE does not honor grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas," in favor of "[a]ll individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status." Immigration Center for Women and Children v. Noem, No. 2:25-cv-09848-AB-AS, Dkt. 57 at 95–96 (C.D. Cal. May 20, 2026) (Birotte, J.) (Ex. T), appeal docketed, No. 26-3961 (9th Cir. June 24, 2026), stay pending appeal denied (C.D. Cal. July 28, 2026). The court found that ICE's practice of detaining persons in valid deferred-action status without process constitutes a de facto revocation that likely violates the APA, the Accardi doctrine, the INA, and the Fifth Amendment, id. at 14–15, 89, and that § 1252(g) does not bar such claims because they arise from ICE's disregard of prior grants of deferred action rather than from any decision to execute a removal order, id. at 23–26. Ms. Perez-Gomez is a member of the Pending Petition Class and, on information and belief, of the Deferred Action Class.

## VII. CLAIMS FOR RELIEF

### COUNT ONE — Fifth Amendment Procedural Due Process: Continued Detention on a Custody Determination Contradicted by the Government's Own Record, Without a Hearing, a Neutral Decisionmaker, or Any Meaningful Process

43. Petitioner realleges paragraphs 1 through 42. The private interest at stake is among the weightiest known to the law: physical liberty, held openly and with the Government's knowledge for twenty-two years, on a release the Government itself granted and never revoked, together with the care of a thirteen-year-old United States citizen child. Zadvydas, 533 U.S. at 690; Mathews, 424 U.S. at 335.

44. The risk of erroneous deprivation under the procedure ICE used is not hypothetical; it has materialized. The only custody determination Ms. Perez-Gomez has received was made on paper, by the detaining agency, with the burden placed on her, without a hearing, without a neutral decisionmaker, and without any reasoned engagement with the evidence she submitted. Diouf II, 634 F.3d at 1091–92. The determination rests on a stated finding — that she is "lacking any significant ties to the community" — that is refuted by the birth certificate, marriage certificate, tax return, church and community letters, LAPD certification, and USCIS deferred-action grant in the Government's own possession. A procedure that permits the custodian to imprison a person for months on a dispositive "fact" its own file disproves provides no process at all. The risk of error is compounded by ICE's own admission that the Field Office responsible for her custody has no record of her in its system and that the facility never reported her detention (Ex. U ¶ 14; Ex. W): a custodian that cannot locate the person it is holding cannot be relied upon to review her custody.

45. The Government's legitimate interest in securing her appearance for removal is fully served by release on an Order of Supervision under 8 C.F.R. § 241.5 — the very relief her submission requested — with reporting and address verification, at a fraction of the cost of incarceration. The Government itself concluded for twenty-two years that not

even that much supervision was necessary. Continued detention in these circumstances violates the Due Process Clause of the Fifth Amendment, and the writ should issue.

**COUNT TWO — Detention in Violation of the Laws of the United States: Continued Detention of a U Petitioner Granted Deferred Action by USCIS, Without Notice or an Opportunity to Be Heard, Contrary to the Fifth Amendment, the Accardi Doctrine, and the Order of This Court in Immigration Center for Women and Children v. Noem**

46. Petitioner realleges paragraphs 1 through 45. USCIS, exercising its authority under 8 U.S.C. § 1184(p)(6) and its bona fide determination policy, has granted Ms. Perez-Gomez deferred action and employment authorization through July 8, 2030, on the basis of a bona fide U petition arising from her certified cooperation with the Los Angeles Police Department. (Ex. M; Ex. K.) ICE has continued to detain her throughout the authorized period of that deferred action, has given her no notice of any intent to revoke it and no opportunity to be heard, and has given the grant no weight whatever in its custody determination — which instead found that she lacks significant ties to the community.

47. That conduct is precisely what this Court stayed on May 20, 2026: ICE's policy of not honoring grants of deferred action conferred by USCIS on U petitioners, and its 2025 Guidance rescinding the victim-centered enforcement directives that protected pending U petitioners from detention. ICWC v. Noem, Dkt. 57 at 95–96. As a member of the classes in whose favor those stays run, Ms. Perez-Gomez is entitled to the benefit of the prior directives and to notice and an opportunity to be heard before ICE may act in disregard of her deferred action. Her continued detention in disregard of a lawful, unrevoked grant of deferred action is detention "in violation of the . . . laws . . . of the United States," 28 U.S.C. § 2241(c)(3), and a deprivation of liberty without due process of law.

**COUNT THREE — Fifth Amendment Substantive Due Process and 8 U.S.C. § 1231(a)(6): Detention That No Longer Bears a Reasonable Relation to Its Purpose**

48. Petitioner realleges paragraphs 1 through 47. Detention under § 1231(a)(6) is lawful only while it serves the purpose of effecting removal. Zadvydas, 533 U.S. at 690, 699. Ms. Perez-Gomez's removal is not presently being effected and is not reasonably foreseeable in the near term: her appeal and motion to stay are pending before the Board; ICE has refused even to accept her Form I-246 application for a stay of removal (Ex. U); USCIS has granted her deferred action for four years; the Secretary is statutorily authorized to stay her removal on the basis of her pending U petition, 8 U.S.C. § 1227(d)(1); and, under the stay entered in ICWC v. Noem, ICE may not remove a pending U petitioner who requests a stay of her final order without first obtaining a prima facie determination from USCIS. Detention that is not effectuating removal, of a person the Government left at liberty for twenty-two years and whom it has never found to be dangerous, serves no legitimate purpose. Petitioner pleads this Count in the alternative, and it will ripen fully on or about November 14, 2026, if she remains detained.

## VIII. RELEASE BY THIS COURT IS THE ONLY ADEQUATE REMEDY; IN THE ALTERNATIVE, A BOND HEARING WITH THE BURDEN ON THE GOVERNMENT

49. Ms. Perez-Gomez does not seek a remand to the immigration court, because no immigration-court custody forum exists for her. An Immigration Judge has no jurisdiction to redetermine the custody of a noncitizen held under a final order. 8 C.F.R. §§ 1236.1(d)(1), 1003.19(a); see 8 C.F.R. § 241.4. The only agency process is ICE's review of its own decision under 8 C.F.R. § 241.4, which the Ninth Circuit has held constitutionally inadequate for prolonged detention, Diouf II, 634 F.3d at 1091–92, and which has already produced, in this case, a determination contradicted by the agency's own file. A further file review by ICE Headquarters on or about October 27, 2026, under the same regulation and with the same allocation of the burden, would be a hollow formality that prolongs rather than remedies the violation — the more so where ICE has

refused to accept her stay application until that review occurs, and where the Field Office with jurisdiction over her custody has told her family that she does not appear in its system at all. (Ex. U ¶¶ 12–15; Ex. W; Ex. X.)

50. Because the sole custody determination in this case is constitutionally infirm on its face, and because the record establishes that Ms. Perez-Gomez is neither a danger nor a flight risk — the Government having so concluded for twenty-two years by its own conduct — the only adequate remedy is the writ itself: immediate release on an Order of Supervision under conditions no more restrictive than reasonable reporting and address verification. A habeas court has the authority to order release outright where the record leaves nothing for a further hearing to decide. 28 U.S.C. § 2243 (the court shall "dispose of the matter as law and justice require").

51. In the alternative only, and should the Court conclude that the record requires further factual development before release is ordered, Petitioner requests that the Court order Respondents, within seven (7) days of the Court's order, to provide her a bond hearing before a neutral adjudicator — an Immigration Judge, or such other neutral decisionmaker as the Court directs — at which: (a) the Government bears the burden of proving by clear and convincing evidence that she is a flight risk or a danger to the community; (b) the adjudicator must consider alternatives to detention, including release on an Order of Supervision, and Petitioner's ability to pay any bond set; (c) the adjudicator must give reasoned consideration to the evidence of her twenty-two years of Government-known liberty, her family and community ties, her pending U petition, and USCIS's grant of deferred action; and (d) a contemporaneous record of the hearing is made. Singh, 638 F.3d at 1203–09; Hernandez, 872 F.3d at 990–91; Diouf II, 634 F.3d at 1091–92. If the Government fails to carry that burden, or if no such hearing is provided within seven (7) days, Petitioner requests that the Court order her immediate release. This alternative does not concede that the § 241.4 procedure could ever have been adequate; it asks the Court to supply, under its own authority, the neutral hearing and Government burden that ICE's procedure lacks.

## IX. DECLARATORY RELIEF

52. An actual controversy exists within the meaning of 28 U.S.C. § 2201. Petitioner is entitled to a declaration that (a) her continued detention on the basis of the Decision to Continue Detention, without a hearing before a neutral decisionmaker and on a finding contradicted by the Government's own record, violates the Due Process Clause of the Fifth Amendment; (b) her continued detention in disregard of USCIS's grant of deferred action, without notice and an opportunity to be heard, is contrary to law; and (c) the procedures of 8 C.F.R. § 241.4, as applied to her, do not provide the process the Constitution requires.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. ISSUE an Order to Show Cause pursuant to 28 U.S.C. § 2243 directing Respondents to show cause within three (3) days why the writ should not be granted, or set such expedited briefing schedule as the Court may direct consistent with General Order No. 26-05, ¶ 2;

2. ISSUE a Writ of Habeas Corpus ordering Respondents to IMMEDIATELY RELEASE Petitioner from custody on an Order of Supervision under conditions no more restrictive than reasonable reporting and address verification;

3. IN THE ALTERNATIVE ONLY, ORDER Respondents to provide Petitioner, within seven (7) days, a bond hearing before a neutral adjudicator at which the Government bears the burden of proving by clear and convincing evidence that she is a flight risk or a danger to the community, at which alternatives to detention and her ability to pay any bond are considered, and of which a contemporaneous record is made; and ORDER her immediate release if that burden is not met or if no such hearing is held within seven (7) days;

4. DECLARE that Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment and the laws of the United States, as set forth in Section IX above;

5. ENJOIN Respondents from transferring Petitioner outside the Central District of California while this Petition is pending, absent prior leave of this Court, and in any event to comply with the notice requirement of General Order No. 26-05, ¶ 6;

6. ORDER Respondents to return to Petitioner all identity documents, immigration documents, and personal property seized from or held in connection with her arrest and detention, and to file a status report within three (3) days of her release confirming compliance;

7. AWARD Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, to be requested by a properly filed separate motion; and

8. GRANT such further relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 27, 2026

Christopher J. DeSalva

CHRISTOPHER J. DESALVA, ESQ.
Law Office of Christopher Joseph DeSalva
Attorney for Petitioner
Lilian Guadalupe Perez-Gomez

**VERIFICATION**

I, Christopher J. DeSalva, declare as follows:

I am the attorney for Petitioner Lilian Guadalupe Perez-Gomez in this action. Petitioner is detained in the custody of Respondents at the Adelanto ICE Processing Center and is therefore unable to verify this Petition personally. Pursuant to 28 U.S.C. § 2242, I make this verification on her behalf. I have read the foregoing Verified Petition for Writ of Habeas Corpus. The facts stated therein are based on my review of Petitioner's immigration records, the exhibits filed herewith, and information provided by Petitioner and her family, and are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 27, 2026, at Indio, California.

Christopher J. DeSalva
CHRISTOPHER J. DESALVA, ESQ.
Attorney for Petitioner

**CERTIFICATE OF SERVICE**

I, Dr. Victor M. Viruena, declare as follows:

On September 27, 2026, acting on behalf of Christopher J. DeSalva, Esq., counsel for Petitioner, I caused the foregoing VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241, together with all exhibits, to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Respondents and all counsel of record, including the United States Attorney's Office for the Central District of California, counsel for Respondents FERETI SEMAIA, THOMAS GILES , DAVID VENTURELLA, MARKWAYNE MULLIN, and TODD BLANCHE. All Respondents are registered for and receive electronic service through the Court's CM/ECF system, and service upon them is complete upon such electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5-3.2. In addition, consistent with General Order No. 26-05, ¶ 2, I caused a courtesy copy of the Petition and exhibits to be transmitted by electronic mail to the United States Attorney's Office for the Central District of California at USACAC.ImmHabeas@usdoj.gov.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 27, 2026, at Palm Desert, California.

Dr. Victor Viruena

DR. VICTOR M. VIRUENA
On behalf of Christopher J. DeSalva, Esq.

CHRISTOPHER JOSEPH DESALVA (SBN 172209)
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
45-902 Oasis Street, Suite D, Indio, CA 92201
Telephone: (760) 447-0031 | Email: desalvalaw@gmail.com

Attorney for Petitioner
LILIAN GUADALUPE PEREZ-GOMEZ

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA — EASTERN DIVISION**

LILIAN GUADALUPE PEREZ-GOMEZ (A098-042-367),

Petitioner,

vs.

FERETI SEMAIA, Warden, Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, U.S. Immigration and Customs Enforcement, Los Angeles Field Office; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States,

Respondents.

Case No. 5:26-cv-______________

**INDEX OF EXHIBITS IN SUPPORT OF VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

[Exhibits A–X — Bates GC-HAB 001–246]
[REDACTED — public filing]

## INDEX OF EXHIBITS

Exhibits A–T (GC-HAB 001–217) are contained in the Exhibits Volume dated August 29, 2026; Exhibits U–X (GC-HAB 218–246) are contained in the Supplemental Exhibits Volume dated September 27, 2026. Bates numbering is continuous across both volumes. An unredacted set of these exhibits is lodged under seal.

| Exhibit | Description | Bates (GC-HAB) |
|---|---|---|
| A | ICE Decision to Continue Detention, ERO Los Angeles (received on or about 08/19/2026) | 001–003 |

| Exhibit | Description | Bates (GC-HAB) |
|---|---|---|
| B | Submission in Support of Release to ICE ERO Los Angeles (07/23/2026), with supplement (08/11/2026), index and proof of service | 004–014 |
| C | Notice to Appear, Form I-862 (03/10/2004) | 015–017 |
| D | Order of Release on Recognizance, Form I-220A, with Form I-831 continuation (03/10/2004) | 018–020 |
| E | Declaration of Lilian Guadalupe Perez-Gomez (Spanish original, English translation, certificate of translation) | 021–032 |
| F | EOIR Automated Case Information printouts (06/29/2026 and 07/31/2026) | 033–036 |
| G | 2025 Form 1040 (joint) and 2025 California Form 540 | 037–054 |
| H | Birth certificate of M.S.R., U.S. citizen child (born 2013) | 055–056 |
| I | Marriage certificate, Los Angeles County (2024) | 057–058 |
| J | Letters of community and church support (4) | 059–064 |
| K | Form I-918, Supplement B, U Nonimmigrant Status Certification (LAPD, 04/30/2024) | 065–070 |
| L | Form I-797C, biometrics appointment notice, Form I-918 (LIN2504652448) | 071–072 |
| M | Form I-797, Approval Notice, Form I-765, category C14 (07/09/2026; LIN2504652532) | 073–075 |
| N | Form I-229(a), Warning for Failure to Depart, with instruction sheet (07/09/2026) and EAD card | 076–078 |
| O | Notice to Alien of File Custody Review | 079–080 |
| P | Motion to Reopen and Rescind In Absentia Order, San Antonio Immigration Court (07/2026) (without exhibits) | 081–090 |
| Q | Immigration Judge Order Denying Motion to Reopen (07/31/2026) | 091–095 |
| R | Notice of Appeal to the Board of Immigration Appeals, Form EOIR-26, with filing package (08/13/2026) | 096–108 |
| S | Motion to Stay Removal Pending Appeal (BIA) (without tabs) | 109–119 |
| T | Immigration Center for Women and Children v. Noem, No. 2:25-cv-09848-AB-AS, Dkt. 57 (C.D. Cal. May 20, 2026) | 120–217 |
| U | Declaration of Jacqueline Elizabeth Puente re: attempted filing of Form I-246 at ICE ERO Los Angeles (executed 09/27/2026) | 218–222 |
| V | Form I-246 package tendered to ICE ERO Los Angeles on 09/25/2026 and returned unfiled: Form I-246 (signed), Form G-28, and Brief in Support with index of exhibits (exhibits omitted) | 223–238 |
| W | ICE Online Detainee Locator System — A-number search page (Petitioner's A-number / El Salvador) and result page: "Search Results: 0" | 239–243 |
| X | ICE Notice to Alien of Interview for Review of Custody Status, served 09/21/2026 — interview scheduled 10/27/2026, 11:00 a.m., Adelanto ICE Processing Center | 244–246 |